## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DAVID B. MILTON,
a/k/a DAVE B. MILTON,

      Petitioner,

v.                                                    Case No. 4:18cv581-RH-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner David Milton has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, (Doc. 1), with supporting memorandum (Doc. 2). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 12). Milton replied. (Doc. 18). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Milton is not entitled to habeas relief.[1]

---

[1] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.      Background and Procedural History[2]

In August 2010, Lamont Harrison (Milton's co-defendant) stored a bag of cash (roughly $18,000) in Kristee Howard's apartment. On August 4, 2010, one of Howard's sisters, Maria Howard, discovered the bag in Kristee's bedroom closet. Maria took the cash out of the bag and posed with it while Kristee took photographs and made a video recording.

The next morning, Kristee visited another sister, Shayla Willis, at Willis's home. Kristee showed Willis and Mario Cloud (Willis's boyfriend) the video of Maria posing with Harrison's money. Kristee then left Willis's home with her mother (Maria Bridges) to run errands. Another sister, Rashaun Howard, joined them later.

At approximately 1:30 p.m., Harrison called Kristee and told her he needed to retrieve his bag from her apartment. Kristee met Harrison and gave him her apartment key. At 2:09 p.m., Harrison called Kristee again, this time very upset, complaining that the money was not in Kristee's apartment. Harrison surmised that someone had used a key to enter the apartment, because there was no sign of forced

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 12, Ex. B (trial transcript)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

entry and the door was locked when Harrison arrived. Harrison told Kristee to meet him, and she agreed.

When Kristee and Harrison met, Harrison questioned Kristee about others who might have a key to her apartment. Kristee recalled giving a spare key to her sister Maria. Kristee called Maria and learned that Maria gave her key to Shayla Willis. Kristee drove to Willis's home, while Harrison followed in his pickup truck. Harrison parked across the street from Willis's home.

Kristee knocked on Willis's front door, and Willis came outside. Kristee asked Willis if she had the spare key to her apartment. Willis acknowledged having the key, but could not recall where it was located. Kristee informed Willis that Harrison's money was missing from her apartment. The two had a heated exchange, and Cloud came outside. Cloud and Kristee argued in the yard, and then Cloud and Willis went back inside the house, leaving Kristee outside.

Harrison observed the argument from his truck. Milton arrived shortly after Willis and Cloud went back inside Willis's home. Milton was driving a black sedan, and exited the car holding two firearms and wearing a bulletproof vest. Milton gave one gun to Harrison. Harrison took the firearm and walked up to Willis's front door, screwing a silencer onto the gun as he approached. Milton, armed with the remaining gun, stood guard near the house.

Page 3 of 46

Harrison kicked in Willis's front door and demanded of Cloud, "Play Boy [sic], where my money at?" Harrison then fired a shot that missed Cloud. Willis immediately retreated into a bedroom with her son. Willis heard Cloud and Harrison scuffle, and another gunshot. Willis stepped out of the bedroom just as Harrison was getting up from the floor. Harrison ran out of the house as Willis followed him. Willis stopped at the porch and saw Harrison and Milton flee to their respective vehicles. Cloud died of a single gunshot wound to the thigh. The projectile severed Cloud's iliac artery and vein.

Law enforcement recovered two .40 caliber shell casings. A single .40 caliber projectile was recovered from a washing machine inside Willis's home. Also inside the washing machine was $4,550 in the same denominations and packaging as Harrison's money. The second projectile was recovered from Cloud's body. At some point after the shooting, Harrison called Kristee Howard again and asked her about his money.

Kristee Howard identified Milton in a photo lineup and in court as the man who drove up, handed Harrison the gun, and stood guard with a gun during the burglary and murder. Shayla Willis identified Milton in court as the man she saw flee from her porch, alongside Harrison, after the shooting.

In Leon County Circuit Court Case No. 2010-CF-3287, a grand jury indicted Milton for First Degree Murder with a Firearm (Count I) and Possession of a Firearm by a Convicted Felon (Count II). (Doc. 12, Ex. A).[3] Co-Defendant Harrison also was indicted for those charges and for the additional charge of Armed Burglary of a Dwelling. (Ex. B (joint trial transcript)). Milton was tried with Harrison and found guilty of murder as charged.[4] (Ex. B; Ex. C (judgment and sentence)). The trial court adjudicated Milton guilty and sentenced him as a prison releasee reoffender to life in prison for the murder and a concurrent term of 3 years in prison for the firearm possession offense. (Ex. C). The Florida First District Court of Appeal ("First DCA") affirmed on October 9, 2014, *per curiam* and without written opinion. *Milton v. State*, 163 So. 3d 1185 (Fla. 1st DCA 2014) (Table) (copy at Ex. F).

On June 2, 2015, Milton file a *pro se* petition in the First DCA alleging ineffective assistance of appellate counsel. (Ex. G). The First DCA summarily denied relief on the merits. (*Id.*).

---

[3] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer. (Doc. 12).

[4] Milton's other charge—Possession of a Firearm by a Convicted Felon—was severed. After Milton was convicted of murder, he pleaded "no contest" to the firearm offense pursuant to a counseled, negotiated plea agreement. (Ex. B at 691-95 (plea colloquy); Ex. C (judgment and sentence)).

On September 30, 2015, Milton filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later supplemented. (Ex. H at 3-18, 19-44). The state circuit court conducted an evidentiary hearing in which Milton was assisted by counsel. (*Id*. at 68-183 (evidentiary hearing transcript)). On July 21, 2017, the circuit court entered a written order denying relief on all claims. (*Id*. at 59-65). The First DCA affirmed *per curiam* without written opinion. *Milton v. State*, 257 So. 3d 419 (Fla. 1st DCA 2018) (Table) (copy at Ex. L). The mandate issued December 17, 2018. (*Id*.).

Milton filed his *pro se* federal habeas petition on December 13, 2018, raising nine claims. (Doc. 1). The State asserts that Milton is not entitled to habeas relief because each claim fails for one or more of the following reasons: (1) the claim is not cognizable on federal habeas; (2) the claim is procedurally defaulted; and (3) the claim is without merit. (Doc. 12).

## II. Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United

States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the

---

[5] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application"

clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v.*

*Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    Discussion

**Ground One**           **"Ineffective Asst. of Counsel Failure to Call Witnesses." (Doc. 1 at 9).**

Milton claims that his trial counsel, Baya Harrison, was ineffective for failing to call the following four witness at trial: Investigator Vincent Boccio, Shayvonn Wallace, Emerald Breedlove, and Shanesse Rolle. (Doc. 1 at 9; Doc. 2 at 10-14). Milton alleges that Boccio would have testified to prior inconsistent statements made by Kativa Merritt (a prosecution witness) to Boccio. Milton alleges that Wallace would have testified that Milton was not the man in the black sedan who gave

Harrison a gun. Milton alleges that Breedlove and Rolle were alibi witnesses. (Doc. 2 at 10-14).

The parties agree that Milton presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 9-11; Doc. 12 at 15). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 15-20).

### A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are

mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### B.    Section 2254 Review Of State Court's Decision

Milton presented this claim as Ground One of his Rule 3.850 motion. The state circuit court denied relief after an evidentiary hearing. The order correctly identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and denied relief for these reasons:

> Defendant claims that counsel was ineffective for failing to call the lead homicide investigator, Vincent Boccio to the stand to impeach witness Kativa Merritt. Investigator Boccio did not testify at the hearing, thus this court does not know what his testimony at trial would have been. Without this testimony, Defendant cannot meet his burden

to prove counsel's performance was deficient or that he suffered prejudice.

Defendant claims that counsel was ineffective for failing to call witness Shayvonn Wallace, who was an independent witness to the homicide. Wallace did not testify at the hearing, thus this court does not know what his testimony at trial would have been. Without this testimony, Defendant cannot meet his burden to prove counsel's performance was deficient or that he suffered prejudice.

Defendant claims that counsel was ineffective for failing to call Emerald Breedlove as an alibi witness at trial. Ms. Breedlove testified at the hearing and stated that Defendant was in her bedroom asleep at the time of the murder, and that she was available to testify to that at trial. Attorney Baya Harrison testified that he had spoken with Ms. Breedlove and knew that she was available to testify at trial. Mr. Harrison testified that he did not believe Ms. Breedlove. He discussed her testimony with Defendant who agreed to the trial strategy not to call her as a witness. Thus, counsel was not ineffective for not calling a witness who[m] he believed was lying, and in any event, had the agreement of Defendant not to call her as a witness. Additionally, given th[e] fact that there were two credible eyewitnesses who identified Defendant as present at the scene of the murder at the time of the murder, the failure to call Ms. Breedlove as a witness did not prejudice Defendant.

Defendant claims that counsel was ineffective for failing to call witness Shanesse Rolle as an alibi witness at trial. Rolle did not testify at the hearing, thus this court does not know what her testimony at trial would have been. Without this testimony, Defendant cannot meet his burden to prove counsel's performance was deficient or that he suffered prejudice.

(Ex. H. at 61-62) (paragraph numbers omitted). The First DCA summarily affirmed.

(Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In reviewing the state court's decision, this court defers to the circuit court's factual findings, because they are amply supported by the record and because Milton has not rebutted them with clear and convincing evidence to the contrary. *See* 28

U.S.C. § 2254(e)(1). This deference extends to the state court's determination that Attorney Baya Harrison's testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Consalvo*, 664 F.3d at 845 (citing 28 U.S.C. § 2254(e)).

With regard to the first element of § 2254(d)(1), there is no merit to Milton's argument that the state court's decision was contrary to clearly established federal law, because the state court utilized the *Strickland* standard. The only remaining question is whether the state court's application of the *Strickland* standard was objectively unreasonable. *See* 28 U.S.C. § 2254(d)(1).

Fairminded jurists can concur in the state court's conclusion that because Milton failed to produce Boccio's, Wallace's and Rolle's testimony, his claim was purely speculative and failed to satisfy either of *Strickland*'s prongs. Where a

petitioner raises an ineffective assistance claim based on counsel's failure to call a witness, the petitioner carries a "heavy" burden to show prejudice "because often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (citation omitted); *see also Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) ("The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.").

Milton's speculation is insufficient to establish a *Strickland* violation. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) (noting that the petitioner offered "only speculation that the missing witnesses would have been helpful," which is insufficient to meet the petitioner's burden of establishing a *Strickland* violation); *see also, e.g., Fuqua v. Sec'y, Dep't of Corr.*, 409 F. App'x 243, 246 (11th Cir. 2010) (holding that petitioner's failure to adduce the proposed witnesses' testimony at the state evidentiary hearing "has reduced the claim of prejudice to mere speculation. . . . Federal habeas relief cannot follow such speculation. Proof is required.").

Concerning Breedlove, the state court reasonably concluded that Milton failed to establish deficient performance, because trial counsel's decision not to call

Breedlove was a reasonable tactical decision made with Milton's agreement. Attorney Harrison testified that he interviewed and deposed Breedlove, who was Milton's girlfriend. Counsel did not find Breedlove credible and did not find any evidence corroborating her testimony. Applying his fifty years of experience, Attorney Harrison decided that Breedlove's testimony would be "chewed up" on cross-examination, and that the ensuing damaging testimony would be detrimental to Milton's defense. (Ex. H at 129-32, 148-55, 161).[6] Attorney Harrison decided that instead of presenting "so-called alibi witnesses [that] would not help him at all," (*id*. at 153), he would create reasonable doubt about the State's identification evidence by impeaching Kristee Howard and Shayla Willis's testimony. (*Id*. at 153-55). Milton agreed with counsel's decision. (*Id*. at 131-32).

Trial counsel's strategic decision not to call Breedlove was reasonable. *See Waters*, 46 F.3d at 1512 ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [federal courts] will seldom, if ever, second guess."); *Richter*, 562 U.S. at 111 ("When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict."); *Putman v. Head*, 268 F.3d 1223, 1246

---

[6] Where a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

(11th Cir. 2001) ("Although an attorney has an ethical duty to advance the interest of her client, that duty is limited by an equally solemn duty to comply with the law and standards of professional conduct."). The state court also concluded, reasonably, that Milton failed to prove there was a substantial likelihood the jury would have believed Breedlove's alibi testimony over Kristee Howard's and Shayla Willis's eyewitness identification testimony. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

The state court's rejection of Milton's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Milton is not entitled to federal habeas relief on Ground One.

### **Ground Two**     **"Ineffective Assistance of Counsel for Failure to Impeach." (Doc. 1 at 11).**

This claim is related to Ground One. Milton claims that trial counsel was ineffective for failing to call Investigator Boccio to impeach Kativa Merritt's trial testimony. Merritt testified that Harrison was unarmed when he arrived at Shayla Willis's house, and that he obtained his gun from the man who arrived in the black sedan (Milton). Milton asserts that had trial counsel called Boccio as a defense witness, Boccio would have testified that Merritt made the following statement to him during his investigation: "Mer[r]itt observed Sh[a]yla Willis' family arguing out

Page 19 of 46

in the front yard. As they were arguing a grey pickup truck arrived and black male wearing a blue shirt holding a black gun ran towards the front door of the victim's residence. A second vehicle arrived, a black sedan, and a black male wearing a camouflage shirt exited the driver's side door and ran towards the front door of the victim's house holding a silver handgun." (Doc. 1 at 11; Doc. 2 at 15-17; *see also* Doc. 12, Ex. H at 11 (Boccio's Incident Report)).

The parties agree that Milton presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 11-12; Doc. 12 at 21). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 15-20).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

### B.    Section 2254 Review Of State Court's Decision

Milton presented this claim as Ground Two of his Rule 3.850 motion. The state circuit court held an evidentiary hearing and denied relief. The order correctly

Page 20 of 46

identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and rejected Milton's claim for these reasons:

> Defendant claims that trial counsel was ineffective for failing to impeach witness Kativa Merritt with her inconsistent statements to Investigator Boccio as recorded in the Incident Report. Without the testimony of Kativa Merritt and/or Investigator Boccio, this court cannot know whether witness Merritt's statements were inconsistent or not. Thus, Defendant cannot meet his burden to prove counsel's performance was deficient or that he suffered prejudice.

(Ex. H at 62). The First DCA summarily affirmed. (Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Milton's claim fails for the same reason as Ground One—it is purely speculative. Milton assumed, but failed to prove, how Merritt and Boccio would have testified had they been asked about Merritt's prior statements to Boccio. Milton also assumed, but failed to establish, that Boccio's testimony concerning Merritt's prior statements would have been admissible and that this testimony probably would

have changed the jury's verdict. Speculation and conjecture do not satisfy *Strickland*'s requirements.

The state court's rejection of Milton's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Milton is not entitled to federal habeas relief on Ground Two.

### Ground Three    "Newly Discovered Evidence." (Doc. 1 at 13).

Milton claims that he has newly discovered evidence of his innocence. Milton's "evidence" is an affidavit—executed by James Smith two years after Milton's trial—in which Smith states that Milton was not the man who provided the firearm to the shooter. (Doc. 1 at 13; Doc. 2 at 18-20 & Ex. B). The State asserts that Milton's claim does not state a basis on which federal habeas relief may be granted. (Doc. 12 at 27-29).

The Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id*.;

*see also Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1272 (11th Cir. 2010) ("[T]his Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases[.]"); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) ("It is not [a habeas court's] role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial."). Milton alleges no independent constitutional violation relating to Smith's alleged exculpatory testimony. Accordingly, Milton's allegations of newly discovered evidence provide no basis for federal habeas relief.

**Ground Four**     **"Ineffective Asst. of Counsel Claims for Failing to Move to Sever Trials." (Doc. 1 at 15).**

Milton claims that trial counsel was ineffective for failing to request that his trial be severed from co-defendant Lamont Harrison's trial. (Doc. 1 at 15; Doc. 2 at 21-23). Milton asserts that had he been tried separately from Harrison, witness Kristee Howard's testimony would have been different in these respects: (1) Kristee Howard "would have been permitted to testify that she knew the money in the closet was for drugs;" and (2) Kristee Howard "would have freely admitted that she could have been mistaken as to whether Petitioner was at the scene of the crime." (Doc. 2 at 21-22). Milton also contends that severance was necessary "to promote a fair determination of guilt or innocence." (Doc. 2 at 21). Milton concedes that at trial counsel's request, the court instructed the jury as follows:

> Multiple counts or informations and multiple defendants. A separate crime is charged against each defendant in each count of the indictment. The defendants have been tried together. However, the charge is against each defendant, and the evidence applicable to him must be considered separately. A finding of guilty or not guilty as to one of the defendants must not affect your verdict as to any other defendant or other crimes charged.

(Doc. 2 at 21-22; *see also* Doc. 12, Ex. B at 562-63 (jury instructions)).

The parties agree that Milton presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 16; Doc. 12 at 30). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 15-20).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

## B.    Section 2254 Review Of State Court's Decision

Milton presented this claim as Ground Four of his Rule 3.850 motion. The state circuit court held an evidentiary hearing and denied relief. The order correctly identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and rejected Milton's claim for these reasons:

Defendant claims that counsel was ineffective for failing to move the court to sever Defendant's trial from the Co-Defendant's trial.

Defendant's claim must fail because counsel's failure to move to sever was not deficient performance. Trial Attorney Baya Harrison testified that there was no good faith basis for him to move to sever the Defendant's trial. He stated that the State had every right to consolidate. Not only was there no grounds to move to sever, but it was a trial strategy to keep the cases together to detract from Defendant's role. Additionally, the State moved to consolidate the Defendant's and Co-Defendant's cases, and Trial Attorney Harrison testified that he made arguments to the court to keep the trial separate at that time. So even though there was no good faith basis to move to sever, trial counsel made those same arguments to the court when the State moved to consolidate. Because there was no good faith basis to sever, and trial counsel made these same arguments to the court in response to the State's motion to consolidate, trial counsel's performance was not deficient.

(Ex. H at 63). The First DCA summarily affirmed. (Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's factual findings are amply supported by the record and are presumed correct, because Milton has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845; 28 U.S.C. § 2254(e)(1). Based

on the state court's findings, fairminded jurists could concur in the state court's conclusion that trial counsel's performance on the severance issue was reasonable, because there was no basis to move for severance and because counsel in fact argued for separate trials in response to the State's motion to consolidate. Milton is not entitled to federal habeas relief on Ground Four.

**Ground Five**      <u>**"Ineffective Asst. of Counsel Claims for Failing to Impeach a Witness's Prior Inconsistent Testimony." (Doc. 1 at 17).**</u>

Milton claims that trial counsel was ineffective for failing to impeach Shayla Willis's trial testimony with statements she made during a pretrial deposition. (Doc. 1 at 17; Doc. 2 at 24-25). Milton alleges that in Willis's deposition, she "backed off of any claim that Dave Milton was present. In fact, she said that she felt sorry for him." (Doc. 2 at 24). Milton obtained this description of Willis's testimony not from the deposition transcript itself, but from someone else's characterization of the deposition testimony (co-defendant Harrison's attorney, Daren Shippy). Milton did not provide this court, or the state court, with a copy of Willis's deposition transcript. Instead, Milton provided only a copy of Shippy's letter to Lamont Harrison summarizing Willis's testimony. (Doc. 2, Ex. C (Shippy letter); Doc. 12, Ex. H at 40-41).

The parties agree that Milton presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 17-18; Doc. 12 at 38). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 39-42).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

### B.    Section 2254 Review Of State Court's Decision

Milton presented this claim as Ground Five of his Rule 3.850 motion. The state circuit court held an evidentiary hearing and denied relief. The order correctly identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and rejected Milton's claim for these reasons:

> Defendant claims that counsel was ineffective for failing to impeach witness Sh[a]yla Willis with her deposition testimony. At trial, Ms. Willis confirmed her identification of Defendant at the scene of the crime. Defendant attaches a letter from his Co-defendant's trial counsel, Mr. Shippy, written to the Co-Defendant, that purports to summarize Ms. Willis' deposition and states that she backs off any identification of Defendant.
>
> Neither Ms. Willis [n]or Mr. Shippy testified at the hearing, nor was Ms. Willis' deposition entered into evidence. Consequently, this

Page 27 of 46

court is without any evidence or testimony to make any finding of deficient performance or prejudice on these grounds. Defendant did not meet his burden to prove counsel's performance was deficient or that he suffered prejudice.

(Ex. H at 63). The First DCA summarily affirmed.

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Fairminded jurists can concur in the state court's conclusion that because Milton failed to produce evidence of Willis's actual statements during her deposition, he failed to establish that counsel was deficient for failing to use them at trial, or that he was prejudiced by the omission.[7] Milton's speculation does not establish a *Strickland* violation.

The state court's rejection of Milton's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the

---

[7] Milton's claim is further undermined by the fact that trial counsel aggressively cross-examined Willis during trial concerning her ability to see Milton's face, and her prior statements to police expressing "skepticism" that the second man was Milton. (Ex. B at 211-15).

Page 28 of 46

decision based on an unreasonable determination of the facts. Milton is not entitled to habeas relief on Ground Five.

| **Ground Six** | **"Ineffective Asst. of Counsel Claims for Failing to Request and/or Object to the Absence of the Independent Act Instruction." (Doc. 1 at 18).** |
|---|---|

Milton claims that trial counsel was ineffective for failing to request a jury instruction on Florida's independent act defense. (Doc. 1 at 18; Doc. 2 at 26-28). Milton alleges that he was entitled to the instruction, because "several witnesses testified that Petitioner was present at the scene, but never entered the residence where the alleged murder took place, nor was there any evidence presented that the Petitioner knew or had any design that a burglary and/or murder be committed." (Doc. 2 at 26).

The parties agree that Milton presented this claim to the state court in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that the First DCA summarily affirmed without explanation. (Doc. 1 at 19; Doc. 12 at 43). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 44-48).

### A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

### B.    Section 2254 Review Of State Court's Decision

Milton presented this claim as Ground Six of his Rule 3.850 motion. The state circuit court held an evidentiary hearing and denied relief. The order correctly identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and rejected Milton's claim for these reasons:

> Defendant claims that counsel was ineffective for failing to request the Independent Act Instruction.
>
> Trial counsel Baya Harrison testified that the theory of defense was that Defendant was not present at the scene of the crime, and that the person who handed the firearm to the Co-defendant was not Defendant Milton. He stated that the Independent Act Instruction was inconsistent with that defense, and a request would have admitted that Defendant was at the scene. Thus, there was no basis to request it, and it was a trial strategy not to. Trial Attorney Harrison's reasoning for not requesting the Independent Act Instruction was sound trial strategy based on Defendant's theory of defense, and it was not deficient performance for not requesting it.
>
> Additionally, Defendant suffered no prejudice by counsel's failure to request the Independent Act Instruction as it would have been denied by the trial court.
>
> The "**independent act**" doctrine arises when one cofelon, who previously participated in a common plan, does not participate in **acts** committed by his cofelon, "which fall outside of, and are foreign to, the common

design of the original collaboration." Dell v. State, 661
So.2d 1305, 1306 (Fla. 3d DCA 1995) (quoting Ward v.
State, 568 So.2d 452 (Fla. 3d DCA 1990)). Under these
limited circumstances, a defendant whose cofelon exceeds
the scope of the original plan is exonerated from any
punishment imposed as a result of the **independent act**.
Id. See also Parker v. State, 458 So.2d 750 (Fla. 1984).
Where, however, the defendant was a willing participant
in the underlying felony and the murder resulted from
forces which they set in motion, no **independent act**
**instruction** is appropriate. See Lovette v. State, 636 So.2d
1304 (Fla. 1994); Perez v. State, 711 So.2d 1215 (Fla. 3d
DCA), review denied, 728 So.2d 204 (Fla. 1998), and cert.
denied, 526 U.S. 1120, 119 S. Ct. 1772, 143 L.Ed.2d 801
(1999); State v. Amaro, 436 So.2d 1056 (Fla. 2d DCA
1983).

Ray v. State, 755 So. 2d 604, 609 (Fla. 2000). In the case at hand, the
facts provide that Defendant and Co-Defendant conspired to meet in
front of the victim's house, Defendant met Co-Defendant in front of the
victim's house and provided him with a firearm, and when Co-
Defendant went inside, Defendant stood watch outside the house with
a firearm of his own. This was a common plan executed by Defendant
and Co-defendant, and there was no evidence that the resulting murder
of the victim exceeded the scope of the plan. To the contrary, with
Defendant supplying the firearm to Co-Defendant, the resulting death
of the victim by use of the firearm is a foreseeable consequence of the
common plan they both set in motion. There was no basis for the trial
court to give the Independent Act Instruction, and thus, trial counsel's
failure to request it did not prejudice Defendant.

(Ex. H at 63-64). The First DCA summarily affirmed. (Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of

Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the

First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state circuit court's factual findings are entitled to deference, because they are amply supported by the record and because Milton has not rebutted them with clear and convincing evidence to the contrary. *Consalvo*, 664 F.3d at 845. This court also defers to the state court's state-law conclusion that Milton did not qualify for an instruction on Florida's independent act defense. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that when the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."); *see also Phillips v. State*, 874 So. 2d 705, 707 (Fla. 1st DCA 2004) (holding the trial court correctly denied a self-defense instruction where the defendant refused to acknowledge that he even wielded a knife).

The state court's conclusion that Milton was not entitled to the instruction, and that counsel made a reasonable strategic decision not to request it, shows that counsel was not deficient and that the failure to request the instruction caused no

prejudice. The state court's rejection of Milton's claim was not contrary to or an unreasonable application of the *Strickland* standard, nor was the ruling based on an unreasonable determination of the facts in light of the evidence presented in state court. *See Callahan, supra; see also, e.g., Sabillo v. Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) (denying habeas relief on claim that counsel was ineffective for failing to request a jury instruction, where the state court concluded that the petitioner was not entitled to the instruction; the state court's conclusion was entitled to deference; and counsel cannot be ineffective for failing to request an instruction to which the petitioner was not entitled).

### Ground Seven      "A Manifest Injustice Occurred as the State Has Failed to Establish that Petitioner Had Any Intent for the Co-defendant to Commit a Crime." (Doc. 1 at 19).

Milton claims that there was insufficient evidence to support his murder conviction, because the State failed to present any evidence that he intended that a crime be committed. (Doc. 1 at 19; Doc. 2 at 29-30). Milton asserts that he presented this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 29).

The State asserts a procedural default defense. The State argues that: (1) Milton did not raise this claim in his direct appeal; (2) when Milton raised this claim in his Rule 3.850 proceeding, the state court denied relief on the independent and adequate state procedural ground that the claim was not cognizable in a

postconviction proceeding; and (3) Milton did not raise a substantive insufficient evidence claim in his state habeas petition. (Doc. 12 at 50-53).

### A.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented to the state court but rejected on an independent and adequate state procedural bar. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). In the second instance, the federal court must determine whether the state's procedural default ruling rested on an adequate state ground independent of the federal question. *See Harris v. Reed*, 489 U.S. 255 (1989).

This Circuit has a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on a state procedural rule to resolve the federal claim. *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd*, 250 F.3d at 1313, or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id*.

## B.    Milton's Claim is Procedurally Defaulted

Milton presented this claim as Ground Seven of his Rule 3.850 motion. The state circuit court clearly and expressly imposed a state procedural bar:

Defendant clams that the State failed to prove that Defendant had any intent for Co-Defendant to commit a crime. This is not a proper issue for a 3.850 motion – any claim that the State failed to prove an element of the offense, such as intent, should have been raised on direct appeal. Nonetheless, the jury is the ultimate determiner of whether or not the State failed to prove intent, and the jury found Defendant guilty as charged of First Degree Murder, finding also that Defendant actually possessed and discharged a firearm inflicting death or great bodily harm during the commission of the offense. This verdict necessarily finds that the State proved Defendant's intent.

(Ex. H at 65). The First DCA summarily affirmed without explanation. (Ex. L).

This court presumes that the First DCA's rejection of Milton's claim rested on the same procedural bar that the lower court imposed. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. . . . [W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.") (citation omitted); *see also Richter*, 562 U.S. at 99-100 (citing *Ylst* as an example where the presumption of a merits adjudication is overcome). The fact that the state circuit court alternatively addressed the merits does not nullify the procedural default. *See Harris*, 489 U.S. at 264 n.10 ("A state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires

Page 37 of 46

the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

The state-law procedural bar is independent of federal law and is adequate to support the state court's judgment. In Florida, a motion for postconviction relief cannot be "based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.850(c); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1231 (11th Cir. 2008) ("Under Florida law, proceedings under Rule 3.850 may not be used as a second appeal, and issues that 'could have been, should have been, or were raised on direct appeal' may not be raised in a later post-conviction motion, absent special circumstances not present in this case.") (quoting *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990)). Milton, therefore, procedurally defaulted his insufficient evidence claim.

Milton seeks to excuse his procedural default by suggesting that his appellate counsel's ineffective assistance was the cause for his failure to raise the claim on direct appeal. (Doc. 1 at 19; *see also* Doc. 12, Ex. D (appellate counsel's brief pursuant to *Anders v. California*, 386 U.S. 738 (1967))). Milton presented this

ineffective assistance of appellate counsel claim to the state court in his habeas petition. (Ex. G). The First DCA denied relief on the merits. (*Id.*).[8]

Generally, an attorney's error during an appeal on direct review may provide cause to excuse a procedural default. *Coleman*, 501 U.S. at 754. The reasoning is that "if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims." *Martinez v. Ryan*, 566 U.S. 1, 11 (2012) (citing *Coleman*, 501 U.S. at 754). Milton, however, was not denied the opportunity to comply with Florida's requirement that he raise his insufficient evidence claim in his direct appeal. After appellate counsel filed an *Anders* brief, Milton was given the opportunity to file a *pro se* brief. (*See* Ex. E).[9] Milton, however, chose not to raise any issues, and did not file a *pro se* brief. Milton

---

[8] Milton's state habeas petition raised a Sixth Amendment ineffective assistance of appellate counsel claim based on counsel's failure to challenge the sufficiency of the evidence. The state petition did not raise a substantive due process challenge to the sufficiency of the evidence. The two claims are separate and distinct for habeas exhaustion purposes. *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement).

[9] A copy of the First DCA's docket sheet reflecting the full text of that court's July 3, 2014, Order setting Milton's *pro se* briefing deadline is attached to this report and recommendation.

fails to show that the cause for his procedural default was his appellate counsel's constitutionally ineffective performance. Milton's procedural default bars habeas review of Ground Seven.

### Ground Eight   "Ineffective Asst. of Trial Counsel for Failure to Convey Favorable Plea Offer." (Doc. 1 at 20).

Milton alleges that after his direct appeal concluded, he contacted trial counsel Baya Harrison for copies of discovery materials. Milton's "request" to Harrison "did not go well," so Milton filed a complaint with The Florida Bar. Milton alleges that in Harrison's response to the Bar complaint, Harrison stated: "I believe that Mr. Milton also turned down a good plea offer (my memory on that is a bit sketchy). Had he listened to me he would not be doing life in prison without the possibility of parole." (Doc. 2, Ex. D). Milton claims that Harrison never communicated a plea offer to him and that "had counsel relayed the planned deal with certainty the court would have accepted it, the State would not have withdrawn it and he [Milton] could have considered it[,] which was reasonable based on the facts of the case because it would have resulted in Petitioner serving less then [sic] his current sentence of life." (Doc. 2 at 31-32).

The parties agree that Milton presented this claim to the state courts in his Rule 3.850 motion; that the state circuit court denied relief on the merits in a reasoned order; that Milton briefed the issue in his postconviction appeal; and that

the First DCA summarily affirmed without explanation. (Doc. 1 at 21; Doc. 12 at 55). The State asserts that Milton is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 12 at 55-57).

### A.   Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard described above.

### B.   Section 2254 Review Of State Court's Decision

Milton presented this claim to the state courts as Ground Eight of his Rule 3.850 motion. The state circuit court held an evidentiary hearing and denied relief. The order correctly identified *Strickland* as the controlling legal standard, (Ex. H at 60-61), and rejected Milton's claim for these reasons:

> Trial counsel Baya Harrison testified at the hearing that the State did not convey a plea offer. Any reference to a possible plea offer in Trial Attorney Harrison's letter to The Florida Bar was mistaken, as his review of the file reflects that the State did not make a plea offer. Additionally, Trial attorney Harrison recalled that a plea offer was not forthcoming because Defendant Milton would not testify against Co-defendant Harrison. Thus, trial Attorney Harrison was not ineffective for failing to convey a plea offer because there was no plea offer, and thus no deficient performance or prejudice to Defendant.

(Ex. H at 65). The First DCA summarily affirmed. (Ex. L).

The First DCA's summary affirmance is an "adjudication on the merits" of Milton's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99, 100. Consistent with *Wilson, supra*, this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

This court defers to the state court's factual findings that Attorney Harrison's evidentiary hearing testimony was credible, and that the State did not make a plea offer. *See Consalvo*, 664 F.3d at 845; 28 U.S.C. § 2254(e). Based on these findings, it was reasonable for the state court to conclude that because no plea offer existed, Milton could not establish deficient performance or prejudice under *Strickland*. Milton is not entitled to habeas relief on Ground Eight.

| | |
|---|---|
| **Ground Nine** | **"Ineffective Asst. of Trial Counsel for Failing to Advise Petitioner Milton that Section 775.021(4), Florida Statutes (1994) Imposes a Duty Upon the State to Convict and Sentence Upon Both the Felony Murder and the Underlying Felony in Furtherance of the Motion to Sever." (Doc. 1 at 22).** |

Milton's final claim appears to fault trial counsel for failing to argue—before, during, or after trial—that Milton could not be convicted of felony murder when he was neither charged with, nor proven guilty of, committing Armed Burglary. (Doc. 1 at 22; Doc. 2 at 33-35). Milton asserts that he raised this claim in his Rule 3.850 proceeding. (Doc. 1 at 22).

The State asserts a procedural default defense. (Doc. 12 at 59-61). The State argues that Milton never presented this ineffective assistance claim to the state courts and that he now is procedurally barred from doing so. (*Id*.). In the alternative, the State asserts that Milton's claim fails on the merits. (*Id*. at 61-63).

### A.     Exhaustion and Procedural Default

The law governing exhaustion and procedural default is set forth above.

### B.     Milton's Claim is Procedurally Defaulted

Milton did not present this ineffective assistance of trial counsel claim to the state court in his Rule 3.850 proceeding (or any other state-court proceeding). Any attempt by Milton to return to state court to present this ineffective assistance claim would be futile under Florida's procedural rule barring second or successive Rule 3.850 motions, *see* Fla. R. Crim. P. 3.850(h)(2), and Florida's two-year limitations period on Rule 3.850 motions, *see* Fla. R. Crim. P. 3.850(b). Ground Nine, therefore, is procedurally defaulted. Milton makes none of the requisite showings to excuse his procedural default. Milton's procedural default bars this court from reviewing Ground Nine.

## IV.   Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis

added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.  The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Dave B. Milton*, Leon County Circuit Court Case No. 2010-CF-3287, be **DENIED**.

2.  The District Court **DENY** a certificate of appealability.

3.  The clerk of court close this case file.

At Panama City, Florida, this 20th day of May, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**